## SPERING'S APPEAL.

A. being the holder of B.'s notes, drawn for value, deposited them with a bank as collateral security for discounts made and to be made for A. B. then delivered to A. duplicate accommodation notes, agreeing to take up the original notes A when B. paid the accommodation notes. B., having notice of the deposit, paid the accommodation notes; but the original notes remained with the bank, who, after their maturity, made a discount for A., without notice of the arrangement between A. and B. The bank is entitled to receive on the notes the amount of the discount made after their maturity.

FROM the Common Pleas of Schuylkill.

*April* 9. Hazzard & Strauch having made an assignment for the benefit of creditors, the Miners' Bank of Pottsville claimed a dividend on three notes drawn by Hazzard & Strauch.

The notes in question were given to Bull & Co., for value, who deposited them, before maturity, with the bank, as collateral security for discounts made and to be made for Bull & Co. After this deposit was made, Bull & Co. obtained from Hazzard & Strauch, duplicate notes, under an agreement, that, as these notes were paid, Bull & Co. would take up the corresponding notes originally given. Hazzard & Strauch, having notice of this deposit, paid the accommodation notes at maturity; but Bull & Co. failed to comply with their agreement. After the maturity of the notes held by the bank, but before notice that Bull & Co. were bound to pay them, the bank made additional discounts for their use. The claim was for a dividend on the notes out of the estate of Hazzard & Strauch to the extent of the balance of this account, which was made up by the last discounts, and which was greater than the amount of the dividend.

KIDDER, P. J., after stating that the transfer of accommodation notes before maturity, as a collateral security, was within the rule, that a holder for value was not subject to the equities between the original parties, and that one taking a note after maturity, took it subject to such equities, proceeded :

" The precise point arising in the case before us, has never been settled by any adjudicated case. Bull & Co. transferred these notes to the bank, before they became due, by their endorsement. They received them in good faith, to hold as collateral security for the payment of discounts, made and to be made to them. At the time of this transfer, it would seem that no equities existed between the original parties, inconsistent with the payment of them to the holder at maturity; and it was not until some time after, that a secret arrangement was made, between Bull & Co. and Hazzard &

Strauch, which resulted in their giving to Bull & Co. the second set of notes, corresponding with those already transferred to the bank. Of this the bank had no notice. When they received the notes, no circumstance existed calculated to put them upon inquiry; and, if they had inquired, the result at that time would have shown, that Hazzard & Strauch were liable to pay Bull & Co. the full amount of these notes at maturity. They were then engaged in business and in credit. It is objected, that, at the point of time when three of these notes fell due, the present balance now due the bank from Bull & Co., had not accrued; but still there was an indebtedness to a large amount, which was subsequently cancelled by payments, and it may fairly be presumed that the bank went on making discounts upon the credit of these notes. If, at the time these notes fell due, notice had been given to the bank of the new arrangement existing between the original parties, and the bank, regardless of this notice, had continued to make discounts to Bull & Co. upon the faith of them, the argument of the counsel for the creditors in this case, might be conclusive; but this state of things does not arise. It is not pretended that the bank had any notice of this arrangement, until after all the discounts were made to Bull & Co., and after their failure.

"It is urged further, that the fact of the non-payment of these notes by Hazzard & Strauch when they fell due, was sufficient to put the bank upon the inquiry. If this were a suit by the bank against Bull & Co., who indorsed these notes over to the bank, the fact that the bank gave no notice to the makers when the notes fell due, would become a material inquiry. But the bank in this proceeding, is not seeking to enforce their claim against the indorsers, but against the makers of these notes. It is true they might have brought suit as soon as the notes matured; but were they bound to? They clearly were not; and, if Hazzard & Strauch paid three of the duplicate notes, without enforcing the agreement of Bull & Co. in reference to the surrender of the notes held by the bank, the latter cannot be made responsible for the loss thus incurred.

"It has originated by their own neglect, and by the great confidence which they reposed in the promises of Bull & Co. Upon the whole, it would seem that the principle involved in this case is not a new one, but the application of a principle well settled, to the facts here disclosed. Public policy, as well as the commercial law, would seem to require its application. We are therefore of

opinion, that the Miners' Bank is entitled to a dividend upon the three promissory notes excluded by the auditor."

*G. M. Wharton*, for the appellant—The payment of the set of accommodation notes, rendered those which had been business notes accommodation—the drawers being liable to pay them under their agreement. It is not disputed, that if the bank had advanced the money before maturity, they would hold discharged of all equities. But here, the last discount, was made after the maturity of these notes. They were then dishonoured; and any subsequent advance, if made on their faith, was subject to the equities, precisely as if it were the first advance: 13 Pet. 65; 14 Ib. 318; 4 Metc. 69; 3 Ib. 308; 2 Ib. 58; 1 Hill, S. C. 1.

*Lœser*, contra.—When the notes were endorsed to the bank they became the lawful holders for value, and the subsequent arrangements or contract between the other parties cannot affect them, with or without notice: Story on Prom. Notes, §195; 2 W. 222; 10 Ib. 270; 16 Pet. 1; Story on Bills, §191–2. But if they are to be affected by these equities, it was the duty of the drawers of the notes, to notify the bank after they had paid the accommodation set.

The court affirmed the decree, with costs, for the reasons given by the court below.